**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**YOGITOES LLC,**

      **Plaintiff,**

**v.**                          **Case No. 6:14-cv-02040-CEM-KRS**

**WE ARE YOGA, INC.**

      **Defendant.**

_____/

**PLAINTIFF YOGITOES' CLAIM CONSTRUCTION BRIEF**

# **TABLE OF CONTENTS**

I.    BACKGROUND OF THE ACTION ................................................................................. 1

II.    BACKGROUND OF THE PATENTS-IN-SUIT ....................................................... 2

III.    SUMMARY OF THE ARGUMENT FOR THE DISPUTED CLAIM TERMS ........................... 5

    a.   Legal Framework for Claim Construction ............................................................ 5

IV.    U.S. PATENT NO. 6,961,969 ............................................................................... 7

    a.   Base Layer ............................................................................................................. 7

    b.   Substantially Hemispherical .................................................................................. 9

    c.   Substantially Non-Absorbent .............................................................................. 10

    d.   First Side, Second Side, Towel ........................................................................... 10

V.    U.S. PATENT NO. 7,069,607 ............................................................................. 12

    a.   Base Layer ........................................................................................................... 12

    b.   First Side, Second Side, Towel, Discontinuously Positioned, At Least Partially Exposed .......... 13

VI.    AGREED CONSTRUCTIONS ................................................................................. 15

    a.   U.S. Patent No. 6,961,969 .................................................................................. 15

    b.   U.S. Patent No. 7,069,607 .................................................................................. 16

VII.    CONCLUSION ...................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.,* 182 Fed. Appx. 994 (Fed. Cir. 2006)........ 13

*Bicon Inc. v. Straumann Co.,* 441 F.3d 945 (Fed. Cir. 2006) .................................................................... 8

*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001) ........................................................................................ 6

*Chico's Fas v. 1654754 Ont.*, 2015 U.S. Dist. LEXIS 30455 (M.D. Fla. 2015) ...................................... 5

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000) ..................................................... 6

*Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F. 3d 1367 (Fed. Cir. 2014)...................................... 11, 14

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ............................................................... 5

*O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ........................... 6

*Operating Sys. Solutions, LLC v. Apple Inc.*, 2013 U.S. Dist. LEXIS 77647 (M.D. Fla. 2013) ............... 5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................................ 5

*Pro Tech Monitoring, Inc. v. Satellite Tracking of People, LLC*, 2010 U.S. Dist. LEXIS 458 (M.D. Fla. 2010)............................................................................................................................................. 5

*Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358 (Fed. Cir. 2007)....................................................... 8

*Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)...................... 11, 14

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)...................................................... 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .................................................... 5

Plaintiff Yogitoes LLC ("Plaintiff" or "Yogitoes") by and through its undersigned counsel and pursuant to the Case Management and Scheduling Order [Dkt. No. 36] files this Claim Construction Brief, and in support, states as follows:

## I.      BACKGROUND OF THE ACTION

Yogitoes and We Are Yoga, Inc. ("WAY") are direct competitors as producers of yoga mats designed to avoid slipping. Yogitoes' yoga mat is sold under the SKIDLESS trademark (Reg. No. 3020870). Yogitoes' patented mat includes tacky projections ("nubs") on the bottom surface of the mat to prevent slippage of the mat while it is in use. Yogitoes obtained the patents-in-suit, U.S. Patent Numbers 6,961,969 (entitled "Absorbent Towel with Projections") and 7,069,609 (also entitled "Absorbent Towel with Projections") (collectively, the "patents-in-suit") to cover their products and to protect their valuable intellectual property.

The WAYmats, the Accused Products in this case, directly infringe upon the asserted claims of the two patents-in-suit. WAY even goes so far as to advertise upon its website at http://waymat.com that its WAYmats contain "rubber nubs that cover the bottom of the mat for more stick on slick surfaces." As stated in Claim 12 of U.S.6,961,696 the towel includes "projections" . . . "within the range of between at least approximately 0.2 millimeters and less than approximately 2.0 millimeters away from the first side of the base layer." Infringement is readily apparent in the below images:



The Yogitoes' nubs, which are covered by U.S. Patent Numbers 6,961,969 and 7,069,609



The WAYmat nubs, amongst other features, directly infringe the asserted claims of the patents-in-suit.  Because of this infringement, in December 2014, Yogitoes sued WAY for infringement of dependent claims 12, 13, 20, and 32 of U.S. Patent No. 6,961,969 (attached hereto as Exhibit 1), and dependent claim 15 of U.S. Patent No. 7,069,607 (attached hereto as Exhibit 2) and identified that the entirety of its WAYmat collection infringes the Asserted Claims.  To be explained in further detail below, these asserted claims cover the projections of the yoga mat that prevent slippage of the mat while it is in use (including the range at which the projections extend from the mat, and the shape of the projections).

## II.    BACKGROUND OF THE PATENTS-IN-SUIT

Susan Nichols invented the Absorbent Towel with Projections.  The novel towel prevents slippage of a yoga mat in use.  Her insight was to provide nubs affixed to the bottom of the mat of sufficient friction and dimension. On July 3, 2003, she filed provisional patent application number 60/484,697. On June 29, 2004, she filed application number 10/881,059 (prosecution history attached hereto as Exhibit 3), which issued as U.S. Patent No. 6,961,969 on November 8, 2005. The '969 patent

claims priority to the July 3, 2003 provisional application.  On July 8, 2005, Nichols filed application number 11/177,900 (prosecution history attached hereto as Exhibit 4), which issued as U.S. Patent No. 7,069,607 on July 4, 2006. The '607 patent is a continuation of the '969, and also claims priority to the July 3, 2003 provisional patent.

The five Asserted Claims ('969 Claims 12, 13, 20, and 32; '607 Claim 15) are presented below (disputed terms are in bold).  Non-asserted claims from which these depend are presented for clarity.

**'969 Patent:**

1. (not asserted) A **towel** for use on a surface, the **towel** comprising:

a **base layer** having (i) a **first side** and (ii) a **second side** that is substantially opposite the first side; and

a plurality of raised first projections that are each separately secured to the **first side**, the first projections having a higher coefficient of static friction than the **base layer** so that the first projections inhibit relative movement between the **towel** and the surface when the first projections are in contact with the surface.

12. (asserted) The towel of claim 1 wherein the first projections project within the range of between at least approximately 0.2 millimeters and less than approximately 2.0 millimeters away from the **first side** of the **base layer**.

13. (asserted) The **towel** of claim 1 wherein at least some of the first projections are **substantially hemispherical** in shape.

19. (not asserted) A **towel** for use on a surface, the **towel** comprising:

a **base layer** having (i) a **first side** that is at least partially formed from a liquid-absorbing material, and (ii) a **second side** that is opposite the **first side**; and

a plurality of first projections that are each separately secured to the first side, the first projections being formed at least partially from a **substantially non-absorbent** material,

3

the first projections having a higher coefficient of static friction relative to the surface than the **base layer**.

20. (asserted) The **towel** of claim 19 wherein the first projections project within the range of between at least approximately 0.2 millimeters and less than approximately 2.0 millimeters away from the **first side** of the **base layer**.

27. (not asserted) A method for manufacturing a **towel**, comprising the steps of: providing a plurality of **substantially non-absorbent** projections; and

separately securing the projections to a liquid absorbing **base layer** so that the projections have a coefficient of static friction that is greater than a coefficient of static friction of at least a portion of the **base layer** relative to a surface.

32. (asserted) The method of claim 27 wherein the step of separately securing includes positioning the first projections to project within the range of between at least approximately 0.2 millimeters and less than approximately 2.0 millimeters away from the **first side** of the **base layer.**

**'607 Patent:**

12. (not asserted) A **towel** comprising:
a base layer having (i) a **first side** that is at least partially formed from a liquid-absorbing material, and (ii) a **second side** that is substantially opposite the **first side** and at least partially formed from a liquid-absorbing material, the **second side** being **at least partially exposed**; and

a plurality of **discontinuously positioned** projections that are secured to and project away from the **first side**, the projections being formed from a material selected from the group consisting of plastic, rubber and epoxy.

4

15. (asserted) The **towel** of claim 12 wherein at least one of the projections projects at least approximately 0.1 millimeters away from the **first side** of the **base layer**.

## III.   SUMMARY OF THE ARGUMENT FOR THE DISPUTED CLAIM TERMS

Yogitoes' proposed constructions of the disputed terms or phrases are consistent with language in the patents-in-suit. Yogitoes has applied the canons of claim construction to the at-issue claims of the '969 and '607 patents and has proposed constructions that are fully supported by the claim language, the patent specification, and the extrinsic evidence. WAY, in contrast, proposes litigation-driven constructions importing limitations and extraneous matter into the claims. The court should reject WAY's invitation to rewrite the claims.

### a.   Legal Framework for Claim Construction

The principles of claim construction are well known to this Court. *See, e.g., Pro Tech Monitoring, Inc. v. Satellite Tracking of People, LLC*, 2010 U.S. Dist. LEXIS 458, *4-5 (M.D. Fla. 2010); *Operating Sys. Solutions, LLC v. Apple Inc.*, 2013 U.S. Dist. LEXIS 77647, *3-7 (M.D. Fla. 2013); *and*, more recently, *Chico's Fas v. 1654754 Ont.*, 2015 U.S. Dist. LEXIS 30455, *3-9 (M.D. Fla. 2015).

Courts must construe the claims according to the understanding of a person of skill in the relevant art at the time of the invention. *See, generally, Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claim interpretation begins with the "words of the claims themselves," which are given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The claims, specification, and the prosecution history are collectively referred to as "intrinsic" evidence. *See generally Phillips*, 415 F.3d at 1312-17. The specification "is the single best guide to the meaning of a disputed term." *Id.* at 1315. The prosecution history also can shed light on the meaning of the claims. *Id.* at 1317. "[L]ike the specification, the prosecution history was created by

5

the patentee in attempting to explain and obtain the patent" and "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*.

However, not every claim limitation requires construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is appropriate to "clarify and when necessary to explain what the patentee covered by the claims," but is not an "obligatory exercise in redundancy"). In particular, claim terms that are not technical terms of art may not require construction. *See, e.g., Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001). Though a limitation may require express construction to resolve a genuine, material dispute over its meaning, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims" (*O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)), which is especially true here, where many of the disputed claims are straightforward and do not require construction. *Id.*

"The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000). Claim terms "'are generally given their ordinary and customary meaning[, . . .] [which] is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-1313 (citation omitted).

The parties have narrowed the scope of their claim construction dispute to the below-referenced claims/terms, as mandated by the Court. Yogitoes addresses each disputed term or claim below.

## IV.     U.S. PATENT NO. 6,961,969

### a.  Base Layer

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **Base Layer**<br>Claims 1, 12, 19, 20, 27 & 32 | A layer with two sides | A single layer of material having two sides. |

Yogitoes proposes that "base layer" be defined as "a layer with two sides" as opposed to WAY's proposed construction of "a single layer of material having two sides."  WAY's proposed construction is both litigation-driven, and inconsistent with both the specification and the prosecution history of the patent.   By its construction, WAY attempts to avoid infringement, as its non-infringement position is that because its WAYmats purportedly contain <u>multiple layers of material</u>, that it cannot infringe if base layer is defined as "a single layer of material having two sides."

A "layer with two sides" (i.e. a layer with a first side and a second side) was consistently used throughout the specification, and the specification never in fact references that a "base layer" was defined as "a single layer of material having two sides" (i.e. a base layer that is comprised of a single layer comprised of only one material).  As support from the specification for Yogitoes' proposed construction:

- "The base layer has a first side and a second side" (Exhibit 1, Col. 1, lines 43-45);
- "It is recognized, however, that either side 16, 18 can be the first side or the second side" (Exhibit 1, Col. 2, lines 40-43);
- "The base layer 12 has a first side 16 and a second side 18. In one embodiment, the projections are discontinuously positioned and are each separately secured to one or both of the sides 16, 18 of the base layer" (Exhibit 1, Abstract)

These are but a limited sample of the multitude of references from the specification of the '969 patent that reference that a base layer is merely a layer with two sides (i.e. a first side and a second side). Following WAY's proposal would in essence make the "at least partially formed from a liquid-

7

absorbing material" limitation from all of the claims meaningless (*see, e.g.*, claims 1, 3, and 19). The "at least partially formed from a liquid-absorbing material" limitation allows for the base layer to be at least partially formed from a liquid absorbing material (i.e. one type of material), while also allowing for the base layer to be also formed at the same time from a non-absorbant material (i.e another type of material).[1] WAY's proposal would make this limitation superfluous, as their construction would allow for a base layer to be formed from a "*single layer of material* having two sides" (i.e. a single layer that is comprised of only one type of material).

As the Federal Circuit has held, claims are construed with an eye toward <u>giving effect to all terms in the claim</u>. *Bicon Inc. v. Straumann Co.,* 441 F.3d 945, 950 (Fed. Cir. 2006) (emphasis ours); *also see Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1362 (Fed. Cir. 2007) (denouncing claim constructions which render phrases in claims superfluous).  Yogitoes' proposed construction for base layer would render the "at least partially formed from a liquid-absorbing material" limitation meaningless, and should be rejected.

WAY's counsel's reliance on an Examiner Interview summary from 4/14/05 from the prosecution history of the '969 in support of its argument is without merit. The 4/14/05 Examiner Interview Summary (Exhibit 3, pages 55 - 56), in fact, supports Yogitoes' position. The summary stated: "Mr. Broder pointed out that the projections are 'each separately secured to the first side' and that the towel comprises a **single base layer having two sides**. Wooten [prior art reference] discloses two layers i.e. fabric layer 12 and a water resistant layer 14 which includes the projections. It appears the claims would read over the Wooten reference." A single base layer having two sides is consistent with Yogitoes position that a base layer is "a layer with two sides". The Examiner Interview supports the position that "a layer with two sides" can be comprised of both an absorbent and non-absorbent material <u>at the same time</u> within the base layer.

---

[1] During prosecution of the '969 patent, on 04/04/05, the applicant amended claim 16 (which became claim 19) to include: a base layer having (i) a first side <u>that is at least partially formed from a liquid-absorbing material,</u> and (ii) a second side that is opposite the first side. This amendment was done to get around prior art.  See Exhibit 3, pages 61 – 66.

### b. Substantially Hemispherical

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **Substantially Hemispherical** Claim 13 | Primarily dome-like in shape | The same as or very close to a half of a sphere |

The specification of the '969, regarding the projections (nubs) references that:

- "the projections can have a **substantially dome or hemispherical shape**" (Exhibit 1, Col. 5, Lines 42 – 44).

- "Moreover, in one embodiment, the projections 14 can be substantially hemispherical in shape" (Exhibit 1, Abstract)

The obvious implication is that the projections be **substantially** dome-like (or half a circle), and not **entirely** dome-like (or half a circle).  *See, e.g.,* the Merriam Webster's definition of substantially, which defines substantially as "being largely *but not wholly* that which is specified … substantially (adverb)."[2] Yogitoes' definition is consistent with the specification, and relevant extrinsic evidence, and its proposed definition should be adopted.  Substantially hemispherical means "primarily (or substantially) dome-like in shape."

WAY, on the other hand, has proposed a litigation-driven definition to exclude their towel's rounded projections from the plain meaning of the claim limitation.  In particular, "**the same as** or very close to half a sphere" is inconsistent with the specification and the relevant extrinsic evidence, including the dictionary definition referenced above.  *See, e.g., Phillips* at 1315: the specification "is the single best guide to the meaning of a disputed term." Substantially (and its synonym primarily) does not mean 100% or "the same as".

---

[2] http://www.merriam-webster.com/dictionary/substantial

### c.  Substantially Non-Absorbent

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **Substantially non-absorbent** <br> Claim 19 | Primarily non-absorbent | Essentially, having the characteristics of, not being capable of absorbing liquid |

Yogitoes definition of "substantially non-absorbent" should also be adopted, similar to the analysis regarding "substantially hemispherical."  *See, e.g.,* the Merriam Webster's definition of substantially, which defines substantially as "being largely *but not wholly* that which is specified … substantially (adverb)."[3] As support in the specification, the material used for the projections were referenced:

- "The material(s) used for the projections **14** can be varied. For example, the projections **14** can be formed from a **substantially non-absorbent** material such as various forms of plastic (e.g., latex), rubber, epoxy, or any other suitable material, as non-exclusive examples" (Exhibit 1, Col. 3, Lines 50 – 54)."

Yogitoes asks the court to follow the guidance of the specification, and relevant extrinsic evidence, in defining "substantially non-absorbent" as "primarily (or substantially) non-absorbent." This definition would not require material to be 100% absorbent, as WAY suggests in its proposed definition, as said material is only required to be substantially (or primarily) non-absorbent.[4]

### d.  First Side, Second Side, Towel

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **First Side** <br> Claims 1, 12, 19, 20, and 32 | No construction needed; plain and ordinary meaning. | One exterior surface of the base layer |

---

[3] http://www.merriam-webster.com/dictionary/substantial
[4] As identified in its non-infringement contentions, WAY is not disputing that its projections are non-absorbent.

| Second Side<br>Claims 1 and 19 | No construction needed; plain and ordinary meaning. | The exterior surface of the base layer opposite the first side. |
|---|---|---|
| Towel<br>Claims 1, 12, 13, 19, 20, 27, & 32 | No construction needed; plain and ordinary meaning. | Any size piece of material formed to have at least two surfaces (for example, the material can be manufactured for use as clothing or non-clothing items) |

The terms <u>first side</u>, <u>second side</u>, and <u>towel</u> require no construction, and should be given their plain and ordinary meaning.  The term's ordinary meanings are "readily apparent even to lay judges" and fact-finders. *Phillips*, 415 F.3d at 1314.   For that reason, the term needs no further construction other than to clarify that the first side of a base layer is different than the second side. The intrinsic record fully supports Yogitoes' position, as the inventor neither redefined any of these terms from their common meaning, nor disavowed the full scope of the plaine meaning.  The Federal Circuit has made clear that claim terms should be "given their plain and ordinary meanings to one of skill in the art," and that the only narrow exception to that rule is when the patentee <u>clearly redefines a term</u> or <u>expressly disavows the full scope of the plain meaning</u>. *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F. 3d 1367 (Fed. Cir. 2014) (emphasis ours); *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012). WAY cannot establish that either exception applies—there is no express redefinition or clear disavowal—and its construction should thus be rejected for that reason alone. For example, in the specification, the terms first side, second side, and towel are all used in their plain and ordinary meaning:

- Exhibit 1, Col. 1, lines 41 – 43: "The present invention is directed to a <u>towel</u> that includes a base layer and a plurality of raised projections that project away from the base layer. The base layer has a <u>first side</u> and a <u>second side</u>."

11

- Exhibit 1, Col. 2, lines 34 - 38: "FIG 1 is a perspective view of a <u>towel</u> in a first, unrolled configuration…the <u>towel</u> includes a base layer …the base layer illustrated in FIG. 1 has a <u>first side</u> and a <u>second side</u>.

Still further, the claims themselves use the terms according to their plain meaning.  *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). For example:

Claim 1 of the '969:

1. A **towel** for use on a surface, the **towel** comprising:

a **base layer** having (i) a **first side** and (ii) a **second side** that is substantially opposite the first side; and

Simply put, a towel is comprised of a base layer having two sides, a first side and a second side. No definition of any of these terms is necessary, as one of ordinary skill at the time of the invention's filing would not need any further definition to understand these terms.  WAY's attempt to require definitions for these terms is inconsistent with the canons of claim construction.

## V.      U.S. PATENT NO. 7,069,607

### a.  Base Layer

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **Base Layer**<br>Claims 12, 15 | A layer with two sides | A single layer of material having two sides. |

The '607 is a continuation of the '969, and the patents share the same specification. As the Federal Circuit has held, "like terms [across patents in the same family] should be construed consistently." *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.,* 182 Fed. Appx. 994, 998

(Fed. Cir. 2006). Yogitoes requests that the claim term "base layer" in the '607 patent be defined similarly as that in the '969 patent as "a layer with two sides".

    **b.  First Side, Second Side, Towel, Discontinuously Positioned, At Least Partially Exposed**

| CLAIM TERM | YOGITOES | WAY |
|---|---|---|
| **First Side**<br>Claims 12 & 15 | No construction needed; plain and ordinary meaning. | One exterior surface of the base layer |
| **Second Side**<br>Claims 12 & 15 | No construction needed; plain and ordinary meaning. | The exterior surface of the base layer opposite the first side. |
| **Towel**<br>Claims 12 & 15 | No construction needed; plain and ordinary meaning. | Any size piece of material formed to have at least two surfaces (for example, the material can be manufactured for use as clothing or non-clothing items) |
| **Discontinuously Positioned**<br>Claim 12 | No construction needed; plain and ordinary meaning | Arranged having gaps |
| **At least partially exposed**<br>Claim 12 | No construction needed; plain and ordinary meaning | Not covered by projections, at least in part |

    Similar to the analysis discussed above regarding the '969 patent, the terms <u>first side</u>, <u>second side</u>, and <u>towel</u> require no construction in the '607 patent and should be given their plain and ordinary meaning.  Similarly, <u>discontinuously positioned</u> and <u>at least partially exposed</u> also do not require any construction.  WAY's attempt to require definitions for these terms is inconsistent with the canons of claim construction.

13

The intrinsic record fully supports Yogitoes' position, as the inventor neither redefined any of these terms from their common meaning, nor disavowed the full scope of the plain meaning.  The Federal Circuit has made clear that claim terms should be "given their plain and ordinary meanings to one of skill in the art," and that the only narrow exception to that rule is when the patentee clearly redefines a term or expressly disavows the full scope of the plain meaning. *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F. 3d 1367 (Fed. Cir. 2014) (emphasis ours); *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012). WAY cannot establish that either exception applies — there is no express redefinition or clear disavowal—and its construction should thus be rejected for that reason alone. For example, in the specification, the term discontinuously positioned is used in its plain and ordinary meaning, and thus requires no definition:

- Exhibit 2, Col. 2, Lines 47 – 52: "The present invention is directed to a towel that includes a base layer and a plurality of raised projections that project away from the base layer. The base layer has a first side and a second side. In one embodiment, the projections can be discontinuously positioned and can each be separately secured to one or both of the sides of the base layer.

Further, the term at least partially exposed was also used in its plain and ordinary meaning, and also requires no definition.

- Exhibit 2, Col. 4, Lines 24 - 37: "Because of the spacing between adjacent projections **14**, the base layer **12** can more readily absorb moisture from the surface **20** and/or the user, with reduced or no interference by the projections **14**. Stated another way, any inhibition of moisture absorption caused by the projections **14** is reduced or eliminated because a substantially portion of the first side of the base layer **12** is still exposed, notwithstanding the quantity of projections **14** secured to the base layer **12**. For example, in one embodiment, the projections **14** are sized, shaped and positioned to cover less than approximately 20% of the total area of the base layer **12**. In alternative embodiments, the projections **14** are sized, shaped and positioned to cover less than approximately 25%, 30%, 40%, 50%, 75% or 90% of the total area of the base layer **12**."

Further, the meaning of the terms can be understood from the claims themselves. *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). For example, claim 12 of the '607 patent reads:

12. A towel comprising:

a base layer having (i) a first side that is at least partially formed from a liquid-absorbing material, and (ii) a second side that is substantially opposite the first side and at least partially formed from a liquid-absorbing material, the second side being **at least partially exposed**; and

a plurality of **discontinuously positioned** projections that are secured to and project away from the first side, the projections being formed from a material selected from the group consisting of plastic, rubber and epoxy.

Simply put, the second side of a towel is <u>at least partially exposed</u>, and the projections on the first side are <u>discontinuously positioned</u>. No definition of any of these terms is necessary, as one of ordinary skill at the time of the invention's filing would need any further definition to understand these terms.

## VI.    AGREED CONSTRUCTIONS

As indicated in the parties Joint Claim Construction Statement [Docket Entry No. 43] the parties came to agreement on the following terms in the '969 and '607 patents. Yogitoes asks that the Court define the below terms as follows:

**a.  U.S. Patent No. 6,961,969**

| CLAIM TERM | AGREED-TO CONSTRUCTION |
|---|---|
| **Coefficient of Static Friction** <br> Claims 1, 19 & 27 | The coefficient of static friction between two surfaces is the ratio of the maximum initial force required to move one over the other to the total force pressing the two together (If F is the maximum initial force required to move one surface over another and W, the force pressing |

|  | the surfaces together, the coefficient of friction, $k_s = F/W$). |
|---|---|
| **Separately Secured / Separately Securing** Claims 1, 19 & 27 | Affixed independently |
| **Projections** Claims 1, 12, 13, 19, 20, 27 & 32 | No construction needed, plain meaning |
| **Liquid-absorbing material** Claim 19 | A material that absorbs liquids |

### b.  U.S. Patent No. 7,069,607

| CLAIM TERM | AGREED-TO CONSTRUCTION |
|---|---|
| **Projections** Claims 12 & 15 | No construction needed. Plain and ordinary meaning |
| **Liquid-absorbing material** Claim 12 | A material that absorbs liquids |

## VII.   CONCLUSION

For the reasons discussed above, Yogitoes asks that the Court adopt its proposed constructions as to the disputed claim terms from the '969 and '607 patent, and adopt the agreed-to claim terms identified between the parties.

Dated:  October 26, 2015    Respectfully Submitted,

        /Wes Klimczak/
        Wes Klimczak, pro hac vice
        TRIAL COUNSEL
        NOVAK DRUCE CONNOLLY BOVE + QUIGG
        LLP
        21771 Stevens Creek Blvd., Suite 1
        Cupertino, CA 95014
        Phone: (408) 414-7356
        Fax: (408) 996-1145
        Wes.klimczak@novakdruce.com

        Michael Byrne, FL Bar # 103685
         LOCAL COUNSEL
        Florida Bar # 103685
        NOVAK DRUCE CONNOLLY BOVE + QUIGG
        LLP
        525 Okeechobee Blvd.
        Fifteenth Floor
        West Palm Beach, FL 33401
        Phone: (561) 847-7800
        Fax: (561) 847-7801

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2015, the foregoing document was electronically filed with the Clerk of the Court and served upon all counsel of record or pro se parties identified on the attached Service List via CM/ECF.


<u>s/Wes Klimczak</u>

**Service List**

*Yogitoes LLC v. We Are Yoga, Inc.,*
Middle District of Florida, Orlando Division
Case No.: 6:14-cv-02040-CEM-KRS

Adrienne C. Love
J. Wiley Horton
Pennington P.A.
215 South Monroe Street, 2nd Floor
Tallahassee, FL 32301
Phone: (850) 222-3533
Fax: (850) 222-2126
adrienne@penningtonlaw.com
wiley@penningtonlaw.com

18